Enrique AHUMADA, et. al., Appellants,

v.

DOW CHEMICAL COMPANY,
Appellee.

No. 14–96–01513–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

March 25, 1999.

Rehearing Overruled June 10, 1999.

David T. Altenbern, Houston, for appellants.

Richard O. Faulk, Kevin L. Colbert, Houston, for appellees.

Panel consists of Justices YATES, FOWLER, and AMIDEI.

## MAJORITY OPINION

LESLIE BROCK YATES, Justice.

This is an appeal from a summary judgment. Appellants are several hundred fishermen who claimed to have suffered damages from a toxic spill in the Bay of Cartagena, Colombia in 1989. Specifically, appellants complained that the toxic spill prevented them from fishing in the bay. Appellants sued Dow Chemical Company, alleging negligence and products liability. Dow Chemical filed a motion for summary judgment claiming appellants could not recover because a Colombian regulation banned fishing in the Bay at the time of the spill.[1] In their response to the motion for summary judgment and in this court, appellants argue that the regulation was never effective because it was not officially published. Appellants also challenge the constitutionality of the regulation and argue that, even if the regulation was deemed legally effective at the time of the chemical spill, material fact questions remain.[2] We affirm.

### Effectiveness of Colombian Regulation

In their first point of error, appellants claim the trial court erred in granting summary judgment because the Colombian regulation, on which summary judgment was sought, was never effective due to lack of required official publication. In point of error seven, appellants claim the issue of enforceability of the regulation is a fact

1. In their motion for summary judgment, appellee relied on Texas case law precluding recovery if the plaintiff's illegal act contributed to the injury. *See Gulf C. & S.F. Ry. v. Johnson,* 71 Tex. 619, 9 S.W. 602 (Tex.1888) (holding that where plaintiff's illegal act contributed to the injury, he may not recover); *Dover v. Baker, Brown, Sharman & Parker,* 859 S.W.2d 441, 451 (Tex.App.—Houston [1st Dist.] 1993, no writ) (affirming summary judgment against Dover because his claims for damages resulted from illegal business transactions in which he knowingly and willingly participated). Appellee alleged that appellants' claim for damages concerns activity that was illegal under Colombian Resolution No. 0683 of 1977.

2. Appellants bring eight points of error challenging the summary judgment. Appellants brief includes a ninth point of error, concerning appellants' personal injury claims, but the parties filed a joint stipulation withdrawing this point of error from consideration.

issue because the proof consisted of competing affidavits.

Appellants contend Colombian law precludes the effectiveness of regulations until they have been published in Colombia's Diario Oficial. In support of this argument, appellants produced the affidavits of Dr. Guillermo Salah Zuleta, attorney and professor of Colombian Administrative Law, and Dr. German Sarmiento Palacio, a Colombian attorney for the plaintiffs. Dr. Zuleta stated that, in his expert opinion, the regulation "never came into force and effectiveness under the Columbian law" because the regulation had never been published. Dr. Palacio stated that the lack of publication led to lack of enforcement of the regulation and that, even if it had been published, it would be subject to attack on a number of theories. An affidavit by Javier Guarin, an attorney employed by Dr. Sarmiento, states that he checked all issues of the Diario Oficial and found no publication of the regulation in question. Appellants further attached a letter from the Ministry of the Environment, Legal Office, offering its opinion that the regulation was not effective because it had not been published. This same letter includes a concession that the Ministry of the Environment "is not the competent authority to certify said [regulation]. . . ."

Appellee filed a formal notice of its intent to rely on foreign law and asked the trial court to take judicial notice of the laws of Colombia that barred fishing in the spill area. Appellee provided the court with the original Spanish version of the regulation as well as an English translation. These materials were attached to the affidavits of Oswaldo Parra, a Colombian attorney and Legal Vice President of Dow Quimica, and Carlos Ramirez, a Colombian chemist for Dow Quimica de Colombia S.A. Appellee's motion was further supported by affidavits of Dr. Hernando Castilla Samper, a Colombian attorney. Dr. Samper discussed a "presumption of legality," based on a principle discussed in the book, THE ADMINISTRATIVE ACT by Gustavo Penagos. Based on this presumption, Dr. Samper observed that an act is enforceable until it is declared null by a competent court. Dr. Samper stated that there had been public notification about the regulation and he quoted from numerous news articles about the fishing ban. Dr. Samper also cited to a decision of the supreme court of Colombia in 1973 in which the court stated: "When a law provides that its enforceability begins upon its issuance, or similarly, upon its signing, that is the time when its enforceability begins, unless prevented by a mandate of a superior rank . : . ." [citation omitted]. Thus, Dr. Samper concluded that the regulation was enforceable.

■ Summary judgment is proper when a movant establishes there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. *See American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true, resolving all doubts and indulging all reasonable inferences in favor of the nonmovant. *See id.*

■ Rule 203 of the Rules of Evidence provides that "[t]he court, and not a jury, shall determine the laws of foreign countries." TEX.R. CIV. EVID. 203. Rule 203 is a hybrid rule by which presentation of the law to the court resembles presentment of evidence, but which the court ultimately decides as a matter of law. *See Gardner v. Best Western Int'l, Inc.*, 929 S.W.2d 474, 483 (Tex.App.-Texarkana 1996, writ denied). Thus, the determination of the law of a foreign country presents the court with a mixed question of law and fact. *See id.* Summary judgment is not precluded when experts disagree on the interpretation of the law if, as in this case, the parties do not dispute that all of the pertinent foreign law has been properly submitted as evidence. *See id.* Where experts disagree on application of the law to the facts, the court is presented with a

question of law. *See id.* When the only evidence before the court is the uncontroverted opinions of a foreign law expert, a court generally will accept those opinions as true as long as they are reasonable and consistent with the text of the law. *See id.* On appeal, we must determine whether the trial court reached the proper legal conclusion.[3] *See Luecke v. Wallace,* 951 S.W.2d 267, 272 (Tex.App.—Austin 1997, no writ).

■ The authorities submitted in the trial court indicate that a lack of official publication may prevent enforcement of the regulation, but that no court has yet addressed this issue. Because neither party brought forward summary judgment proof of any authority holding the regulation ineffective or unenforceable, the trial court could have determined that, as a matter of law, appellants were seeking damages for an activity that, under present law, is illegal in Colombia. Whether or not the regulation could be enforced against appellants or other members of the public is a separate issue and one which must be answered by the Colombian courts.

Moreover, the regulation states "[it] shall become effective since [sic] the date of its execution," which in this case was June 2, 1977, well before the toxic spill occurred. Accordingly, the trial court could determine as a matter of law, based on the record before it, that the regulation became effective on June 2, 1977, despite a lack of official publication, and that fishing in the bay was illegal under this regulation at the time of the toxic spill. Thus, we find no error by the trial court in granting summary judgment on this ground. We overrule points of error one and seven.

## Constitutional Violation

■ In point of error two, appellants claim the enforcement of the fishing ban regulation violates the Colombian constitutional rights of the plaintiff fishermen to due process and to earn a livelihood from "subsistence/artisanal" fishing. Appellants claim the Colombian constitution provides for a right to earn a living and renders ineffective any law or regulation conflicting with this right. In support of this claim, appellants produced Dr. Sarmiento's affidavit describing the constitutional right.

Appellee responds that the Colombian constitution does not recognize a right to earn a living. In support of its position, appellee produced the affidavit of Dr. Samper, who quoted article 39 of the constitution, which provides every individual with the freedom of choosing his or her own profession. This section further allows the government to regulate the practice of professions and to inspect professions regarding "ethics, safety and healthiness for the public." Based on this, appellee contends the government could place limitations on the practice of professions, such as fishing, for reasons of public safety and health. Neither party attached a copy of the constitution.

In his affidavit, Dr. Samper further argued that the issue of constitutionality should not affect the validity of the regulation until the Colombian court has declared the regulation unconstitutional. Samper explained that, although no case authority supports it, a presumption of legality should be applied until appellants challenge the constitutionality of the regulation in Colombian court.

Because appellants challenge the constitutionality of the regulation, appellants had the burden of producing some proof rais-

3. Arguing that our review is de novo, appellants brought forward additional proof not provided to the trial court. Appellee filed a motion to strike, which we have taken with the case. Appellee has also filed additional materials. Because we are reviewing a summary judgment, we are constrained to consider only that proof presented to the trial court in the summary judgment proceeding. *See Johnnie C. Ivy Plumbing Co. v. Keyser,* 601 S.W.2d 158, 160–61 (Tex.Civ.App.-Waco 1980, no writ). Thus, we grant appellee's motion to strike untimely presented foreign law materials and we refuse to consider all materials not presented to the trial court in the summary judgment proceedings.

ing a fact issue. Appellants included with their response no case law or copy of the Colombian constitution raising a fact issue regarding the constitutionality of the regulation in question. Furthermore, appellants do not challenge Dr. Samper's quotation of the constitutional provision. We overrule point of error two.

**Sunset Provision of Regulation**

 In point of error three, appellants contend the trial court erred in granting summary judgment because there was a material fact question concerning a sunset provision of the regulation. The regulation provides in part:

> ARTICLE FIRST–While the contamination in the aquatic ecologic system of the Bay of Cartagena persists, there shall be suspended all uses made according to law and the permits, patents, authorizations and licenses granted for the exploitation of the hydro-biologic resources in said Bay.

Appellants argue that appellee did not meet its summary judgment burden of proving that contamination in the Bay, as contemplated by the regulation, persisted as of the date of the chemical spill which is the subject of the lawsuit.

Labeling this a challenge to a "vague 'Sunset' provision," appellee responds that the regulation provides for its effectiveness upon issuance and is entitled to a presumption of legality. Again, appellee claims a challenge to the regulation's validity must occur in a Colombian court. Because the regulation must be presumed effective and valid, appellee contends appellants were required to produce summary judgment proof rebutting the presumption of validity. Because no such proof was produced, appellee claims the trial court properly granted summary judgment.

Sunset provisions, as used in Texas, state a date certain when the subject of the regulation will discontinue. *See, e.g., Turner v. Richardson Indep. School Dist.,* 885 S.W.2d 553, 557 n. 10 (Tex.App.—

Dallas 1994, writ denied)(observing that Sunset Act provision required abolishment of the Texas Commission on Human Resources in 1999 unless it was continued in existence). Thus, we do not interpret article one of the regulation to be a sunset provision. We instead agree with appellee that a challenge to the validity of this regulation on the ground that contamination no longer exists is a matter for the Colombian courts to decide. In any event, once appellee offered the regulation as a ground for summary judgment, we believe the burden of proof shifted to appellants to raise a fact issue as to the continued validity of the regulation. Appellants offered no summary judgment proof on this issue. Accordingly, we overrule point of error three.

**Waiver of Enforcement of Regulation**

 Under point of error four, appellants claim the issuance of fishing licenses to appellants by the same administrative body that issued the regulation amounts to waiver of enforcement of the regulation against plaintiffs. Appellants attached copies of their licenses to their summary judgment response.

Appellee responds that the fishing licenses only grant general rights to fish in Colombian waters, not specifically in the Bay of Cartagena. Thus, appellee claims the issuance of these licenses does not act as a waiver of enforcement of the regulation. The licenses do not mention the Bay of Cartagena. Instead, the licenses specify the Caribbean Sea as the fishing area, the Atlantic region, and Boca Chica as the expedition area. Because the licenses do not expressly allow fishing in the Bay of Cartagena, we do not find that issuance of fishing licenses amounted to a waiver of enforcement of the fishing ban. We overrule point of error four.

**Failure to Perform Governmental Relocation Assistance**

 In point of error five, appellants claim the government's failure to provide relocation assistance attached to the fishing ban defeats enforcement of the regula-

tion. Dr. Sarmiento stated in his affidavit that the regulation designated another zone for subsistence and artisanal fishing and promised to facilitate fishing in this new location. Thus, appellants contend, even if the regulation was effective and applied to small-scale fishermen, the regulation was not enforceable against appellants because the governmental assistance condition precedent to applicability was never performed.

The regulation provides:

ARTICLE SECOND–Activities of subsistence and artisanal fishing may only be conducted and activities of industrial fishing in all its modalities are forbidden in the areas of the Bay of Barbacoas. . . .

Although this language is very awkward, we construe it to mean that small-scale (non-industrial) fishing is allowed in the alternate location of the Bay of Barbacoas. This provision does not provide for governmental assistance to small-scale fishermen in reaching the alternate bay, nor does the regulation contain any language constituting a condition precedent to its effectiveness. Thus, we overrule point of error five.

**Judicial Admissions of Effectiveness of Regulation**

■ In point of error six, appellants contend the trial court erred in granting summary judgment on the basis of comments made by an attorney and a Colombian judge in another proceeding. Appellants contend an attorney's comments about the fishing ban being "accepted" and a Colombian Judge's comment that it was "approved" cannot be the basis of binding judicial admissions, judicial notice, or collateral estoppel.[4]

In support of its argument regarding judicial admissions, appellee attached the affidavit of Dr. Samper, who stated that in

a conciliation meeting, plaintiffs who had been affected by the chemical spill and their attorneys, including Dr. Sarmiento (who submitted an affidavit supporting appellants summary judgment response), admitted the enforceability of the regulation by stating they accepted the content of the regulation. The transcript of this conciliation meeting or hearing, is attached to Samper's affidavit but has no English translation.

■ Texas law deems a statement a judicial admission if:

(a) it is made in the course of a judicial proceeding;

(b) it is contrary to an essential fact for the party's recovery;

(c) it is deliberate, clear and unequivocal;

(d) it is related to a fact upon which a judgment for the opposing party could be based; and

(e) enforcing the admission would be consistent with public policy.

*Sepulveda v. Krishnan,* 839 S.W.2d 132, 135 (Tex.App.—Corpus Christi 1992), *aff'd,* 916 S.W.2d 478 (Tex.1995). As the summary judgment movant, appellee had the burden of proving that Sarmiento's alleged statements were judicial admissions. Appellee did not meet this burden.

Samper's affidavit describes the proceeding as a public hearing regarding conciliation. There is no transcript of the proceeding showing the statements were made during a judicial proceeding. Furthermore, the statement that Sarmiento allegedly made, that plaintiffs accept the content of the regulation, does not necessarily constitute a statement that they agree the regulation is enforceable. The alleged statement may merely mean they accept that the regulation purports to ban fishing in the Bay of Cartagena. Thus,

---

4. We have found no authority for a court to take judicial notice of an excerpt from the transcription of court proceedings in a foreign country. The parties do not include any arguments regarding judicial notice and we do not address whether the court took judicial notice of the proceedings. The parties also do not address collateral estoppel. Accordingly, we address only the claim that the statements constitute a judicial admission.

Samper's affidavit is insufficient to establish a deliberate, clear, and unequivocal judicial admission. We sustain point of error six.

**Interested Witness Affidavits**

In point of error eight, appellants argue that appellee's affidavits in support of its motion for summary judgment are from interested witnesses who have a financial interest in the outcome of the suit. Appellants also claim these affidavits are insufficient summary judgment proof.

Affidavit evidence from an interested witness in support of a summary judgment is not necessarily fatal if the testimony from the witness is direct, clear, positive, dispositive and free from contradictory evidence. *See Casso v. Brand,* 776 S.W.2d 551, 558 (Tex.1989). The alleged interested witnesses include Oswaldo Parra, an employee of Dow Quimica, Carlos Ramirez, an employee of Dow Quimica, and Dr. Samper, whose nephew has represented Dow Quimica. Appellants assert, and appellee does not dispute, that Dow Quimica is a subsidiary of appellee. Instead, appellee contends Dow Quimica is a separate corporate entity that would not be affected by a judgment in appellee's favor.

Appellee argues we need not consider appellants' challenge to the affidavits because appellants did not raise this claim in the trial court. Defects in the form of affidavits are not grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend. *See* TEX.R. CIV. P. 166a(f). Even if properly objected to, affidavits will remain part of the summary judgment evidence unless there is a written, signed order sustaining the objection. *See Peerenboom v. HSP Foods, Inc.,* 910 S.W.2d 156, 160 (Tex.App.—Waco 1995, no writ). On the other hand, if the defect is one of substance, the defect cannot be waived by failure to object or obtain a written order. *Id.* This objection may be raised for the first time on appeal. *See id.*

Case law holds that affidavits of interested witnesses present a defect of form requiring an objection in the trial court. *See, e.g., WTFO, Inc. v. Braithwaite,* 899 S.W.2d 709, 721 (Tex.App.—Dallas 1995, no writ). Because appellants did not raise this complaint in the trial court, they have waived this complaint on appeal.

Appellants also claim the affidavits are not direct, clear, positive, and free from contradictory evidence. Our review of the affidavits indicates that they present sufficient uncontroverted facts to support summary judgment. These include the following: (1) before and after the toxic spill, a resolution existed that prohibited fishing in the Bay of Cartagena; (2) the resolution provided it was effective upon issuance; (3) Colombian courts have recognized a presumption of validity regarding laws that have not been declared invalid by a Colombian court; and (3) the resolution has never been declared invalid by a Colombian court. Accordingly, we overrule point of error eight.

**Conclusion**

Although we have held appellee did not meet its burden of proving judicial admissions by appellants regarding the validity of the regulation, appellee nonetheless presented summary judgment proof showing that, as a matter of law, the fishing ban regulation was effective and precluded appellants from seeking damages for the toxic spill in the Bay of Cartagena. Because we have found no error by the trial court in granting appellee's motion for summary judgment, we affirm the judgment of the trial court.

MAURICE E. AMIDEI, J., dissenting.

MAURICE E. AMIDEI, Justice, dissenting.

Appellant's Point of Error Number 2 complains that the trial court erred in granting Summary Judgment, because the

Columbian constitutional rights of the plaintiff fishermen to earn a livelihood from subsistence/artisanal fishing and due process prevail over the enforcement of the alleged "fishing ban" regulation against plaintiffs.

Under Columbian constitutional law, the fishermen have a right to subsistence and artisanal fishing to protect their lives and their families. Any incompatibility between any other law or juridic norm with such rights to fish shall be resolved in favor of such rights.

The resolution in question raised as an absolute defense by appellee recognizes the constitutional right to subsistence and artisanal fishing. Appellee admits that the toxic spill area is not within the areas where artisanal and subsistence fishing is allowed by the resolution. There is no proof that appellants fished in the toxic spill area. The appellants' only connection with the toxic spill area was that they were enlisted to help clean it up and were allegedly personally injured in doing so. In fact, appellants allege they were prevented from fishing in the area of the toxic spill because of the spill. Only industrial fishing is banned in the Bay of Barbacoas and within a zone set out in the resolution.

Not only do appellants have valid fishing licenses but also they were not banned by the resolution. The appellees' claim that "all fishing" was banned is not well taken. Assuming arguendo the resolution applies to appellants, there are further considerations.

We must construe a foreign law in harmony with the construction placed on a similar statute of Texas. *State v. Grubstake Inv. Assn.*, 117 Tex. 53, 297 S.W. 202 (1927) (laws of Mexico should be given the same efficacy in reserving title to river beds as is given to Texas statutes); *Powell v. Penny*, 336 S.W.2d 224 (Tex.Civ.App.—Texarkana 1960), *rev'd on other grounds*, 162 Tex. 497, 347 S.W.2d 601 (1961) (it is a well established rule that each state may determine the nature of a foreign enactment by application of its own rules of construction); *Mitchell v. San Antonio Public Service Co.*, 35 S.W.2d 140 (Comm. of Appeals 1931, holding approved); *McKinney v. Minkler*, 102 S.W.2d 273, 279 (Tex.Civ.App.—Fort Worth 1937, no writ) (where no decisions of a foreign state construing statutes of that state can be found directly in point on the question involved, such statute will be construed as if it were a local statute).

Generally, resolutions, even those promulgated by the legislature, are not laws. *City of San Antonio v. Micklejohn*, 89 Tex. 79,33 S.W. 735 (1895) (no law shall be passed, except by bill); *Mosheim v. Rollins*, 79 S.W.2d 672 (Tex.Civ.App.—San Antonio 1935, writ dism'd) (joint resolution that prohibited planting of permitting bermuda grass to grow along state highways held not a law creating a cause of action against the highway commission from so planting or growing bermuda grass).

Further, since there are no sanctions for violating the resolution are provided therein, the resolution cannot be afforded validity as a law. EDWIN W. PATTERSON, JURISPRUDENCE, MEN AND IDEAS OF THE LAW (1953), § 2.33. It merely provides violators shall be sanctioned according to law and does not reference what law. We do not know whether the Columbian legislature or some administrative agency followed up on the resolution and passed a law or binding regulations applicable to this case.

Assuming the resolution has the effect of a law and it was applicable to the appellants, it would not operate as an absolute ban to their suit.

For the violation of the resolution or statute to be the basis of civil liability or a defense, in the absence of an express provision therefor, the appellee must be within the class for whose protection the resolution was passed, and the injury must be of the nature the resolution was intended to prevent. *Brownstone Park Ltd. v. Southern Union Gas Co.*, 537 S.W.2d 270, 274 (Tex.Civ.App.—Austin, 1976, writ ref'd n.r.e.); *Mundy v. Pirie–Slaughter Motor*

*Co.,* 146 Tex. 314, 206 S.W.2d 587 (1947); *Texas & Pacific Ry. Co. v. Baker,* 215 S.W. 556 (Tex. Comm'n App.1919, judgm't.adopted), 40 TEX. JUR.2d *Negligence* § 11–15 (1962); RESTATEMENT (SECOND) OF TORTS § 286 (1965).

Appellee, a chemical company, was not expressly mentioned in the resolution and, considering the main purpose of the resolution being to clean up certain heavy metals in the bay, appellee was certainly not within the class for whose protection the resolution was passed, and the injury intended to be prevented by the resolution was "to avoid contingent alterations in human health." Appellee cannot use an alleged violation of the resolution as a defense to their alleged pollution. The resolution was intended for the protection of public health, not to protect a chemical company accused of polluting the bay by a toxic spill. Continued fishing by appellants, if any, could only mitigate appellee's liability to appellants, and could not be the proximate cause of any damage to appellees. It cannot be reasonably held that the resolution was passed for the protection of appellee.

Furthermore, appellee cannot prove the injuries alleged by appellants were caused by appellants' violation of the resolution. Rules of causation apply with equal force in a case of violation of a statute or an ordinance as in the ordinary case where negligence is a fact issue. *Alpine Telephone Corp. v. McCall,* 143 Tex. 335, 184 S.W.2d 830 (1944); *J.S. Abercrombie Co. v. Delcomyn,* 134 Tex. 490, 135 S.W.2d 978 (1940); *Missouri P.R. Co. v. American Statesman,* 552 S.W.2d 99 (Tex.1977). I would hold as a matter of law that any violation of the resolution by appellants was not a proximate cause of the injuries alleged by appellants.

Since appellants were not convicted of any crime and were not proved to have violated any resolution or regulation, they are entitled to have submitted issues of liability, causation, damages and comparative responsibility pursuant to the Texas Comparative Responsibility Act. TEX. CIV. PRAC. & REM.CODE ANN. § 33.001 et seq.(Vernon 1986 & Supp.1999). Appellee would not be entitled to an illegality defense issue without proof Appellants were convicted of violating the resolution.

For the "illegality defense" to completely ban appellants' cause of action, the appellants' cause of action would require aid from an illegal transaction or must depend upon an illegal act to which they are a party. *Gulf, C. & S.F. Ry. Co. v. Johnson,* 71 Tex. 619, 9 S.W. 602, 603 (Tex.1888). Appellants' cause of action does not require aid from, or depend on, any illegal act. Appellants claim they were injured from the toxic spill caused by appellee, *i.e.,* loss of income from fish catches. If appellants were guilty of illegal fishing, their cause of action is complete and distinct without reference to the amount of fish illegally caught. If anything, the number of fish illegally caught would mitigate appellees' damages. The alleged illegal fishing by appellants did not contribute to the injury to appellants as is required by *Gulf, C. & S.F. Ry.Co. v. Johnson,* 9 S.W. at 603 *Johnson* does not support appellees' position in this case.

Likewise, the other cases cited by appellee do not support its position herein. *Houston Ice & Brewing Co. v. Sneed,* 63 Tex.Civ.App. 17, 132 S.W. 386 (1910, writ dism'd). This case involved a cold drink dealer's suit against a supplier for fraud as to whether a drink was capable of producing intoxication. *Id.* at 387. The dealer had been convicted of violating the tax and license law for selling the drink without a license. *Id.* The Court held that the dealer cannot seek indemnity against the supplier for the dealer's own illegal act. *Id.* The appellants in this case have not been convicted of anything, and they are not seeking indemnity against appellee for any illegal act. The appellee does not claim that appellants are seeking indemnity for fines or costs of prosecution they received in some criminal prosecution. The rules of evidence would prevent appel-

lee from trying to prove appellants illegally fished unless appellee could show a final conviction. The alleged illegal fishing should not be allowed to be mentioned in this case in any respect, including in the summary judgment proceedings.

The appellee also cites *Saks v. Sawtelle, Goode,* 880 S.W.2d 466 (Tex.App.—San Antonio 1994, writ denied) which only involves a suit by parties who were convicted of bank fraud against their attorneys who had helped them with the illegal loan. The case holds much like the *Houston Ice & Brewing Co.* case and disallows indemnity to a person convicted of a crime. The *Saks* case does make a pertinent point, that a summary judgment movant, in order to conclusively establish the requisite essential element or elements, must identify or address the cause of action *or defense* and its elements in the motion. *Saks,* 880 S.W.2d at 469. Appellees motion for summary judgment does not address whether appellants were guilty of illegal fishing, and if so, whether and how much such illegal fishing contributed to the appellants' injuries. Appellee makes the erroneous assumption that if there is a fishing ban in the area of the toxic spill, then fish cannot be caught in other Columbian waters. It is an evidentiary matter for the parties to show how much the total fish population was diminished by the toxic spill and the corresponding reduction in fishermen's income, if any. If a fisherman is convicted for fishing in the wrong place, he is fined by the state and while he cannot seek indemnity for the fine from appellee, the number of fish illegally caught has no relevance to his claim against appellee for killing a substantial number of the total fish population.

I would grant appellants' Point of Error Number 2 and reverse and remand.