Debra Marie RAMIREZ & Victor Bocanegra, Both Individually and as Next Friends of Colby Alan Ramirez, a Minor, Appellants,

v.

Douglas K. McINTYRE, M.D., Appellee.

No. 03–01–00027–CV.

Court of Appeals of Texas, Austin.

Oct. 25, 2001.

William O. Whitehurst, Laurie Michelle Higginbotham, Whitehurst, Harkness, Ozmun & Archuleta, P.C., Austin, for appellants.

Jim Ewbank, Ewbank & Byrom, P.C., Austin, for appellee.

Before Chief Justice ABOUSSIE, Justices YEAKEL and PATTERSON.

MARILYN ABOUSSIE, Chief Justice.

Appellants, Debra Marie Ramirez and Victor Bocanegra (collectively "appellants"), appeal the trial court's grant of summary judgment in favor of appellee, Dr. Douglas McIntyre, in a medical malpractice action for damages resulting from

the labor and delivery of their son, Colby Alan Ramirez. We will reverse the trial court's judgment and remand the cause.

## BACKGROUND

On April 23, 1998, Debra Marie Ramirez ("Ramirez") presented to St. David's Medical Center to have labor induced, as scheduled by her obstetrician and attending physician, Dr. Patricia Gunter. Dr. Gunter visited Ramirez twice during the early stages of delivery, but subsequently left the labor and delivery area. As Ramirez's labor rapidly progressed and the baby's head began to crown, Dr. Gunter still had not returned. Dr. Douglas McIntyre was on the labor and delivery floor when a nurse paged for a "Dr. Stork" to Ramirez's delivery room. A "Dr. Stork" page means that a delivery is in progress without a doctor and a doctor is needed immediately. Dr. McIntyre was not on-call for Dr. Gunter and had never treated or seen Ramirez but voluntarily responded to the page.

When Dr. McIntyre arrived at Ramirez's delivery room, a nurse was supporting the baby's head and told Dr. McIntyre that Ramirez was about to deliver. The indications of shoulder dystocia, a condition in which an infant's shoulder becomes lodged against the mother's pelvic bone, were present. Following several unsuccessful attempts of standard maneuvers to deliver the baby, Dr. McIntyre felt for the posterior arm of the baby and swept it across the baby's chest and delivered the baby's arm. Ramirez then delivered the anterior shoulder and the rest of the baby. Dr. McIntyre was in Ramirez's delivery room for approximately six minutes. Dr. Gunter arrived at the end of the delivery and assumed care of Ramirez and Ramirez's baby, Colby. As a result of the labor and delivery process, the soft tissues and nerves of Colby's right upper extremity, neck, and shoulder were injured, leaving Colby with permanent neurological impairment and paralysis of his right upper extremity and shoulder girdle.

Appellants filed suit against Dr. Gunter, Dr. McIntyre, and Columbia/St. David's Health Care System, L.P. d/b/a St. David's Medical Center. Dr. McIntyre filed a motion for summary judgment raising an affirmative defense under the Good Samaritan statute found in section 74.001 of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.001 (West Supp.2001). In a final judgment, the trial court granted Dr. McIntyre's motion for summary judgment. By two issues, appellants now appeal that judgment.

## DISCUSSION

Because the propriety of a summary judgment is a question of law, we review the trial court's decision *de novo. Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex.1994); *Texas Dep't of Ins. v. American Home Assurance Co.*, 998 S.W.2d 344, 347 (Tex.App.—Austin 1999, no pet.). The standards for reviewing a motion for summary judgment are well established: (1) the movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

A defendant's motion for summary judgment should be granted if the defendant either disproves at least one essential element of each of the plaintiffs' causes of action or establishes all the ele-

ments of an affirmative defense. *American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997). When a defendant moves for summary judgment on an affirmative defense, he must prove each essential element of his defense as a matter of law, leaving no issues of material fact. *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex.1996). The function of the summary judgment is not to deprive a litigant of his right to trial by jury, but to eliminate patently unmeritorious claims and untenable defenses. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 n. 5 (Tex.1979).

■ Dr. McIntyre based his motion for summary judgment on the affirmative defense found in the Good Samaritan statute at section 74.001 of the Texas Civil Practice and Remedies Code. Tex. Civ. Prac. & Rem.Code Ann. § 74.001. The relevant portions of that statute are as follows:

(b) This section does not apply to care administered:

(1) for or in expectation of remuneration; ...

(c) If the scene of an emergency is in a hospital or other health care facility or means of medical transport, a person who in good faith administers emergency care is not liable in civil damages for an act performed during the emergency unless the act is willfully or wantonly negligent, provided that this subsection does not apply to care administered:

(1) by a person who regularly administers care in a hospital emergency room unless such person is at the scene of the emergency for reasons wholly unrelated to the person's work in administering health care; or

(2) by an admitting or attending physician of the patient or a treating physician associated by the admit-

ting or attending physician of the patient in question.

(d) For purposes of Subsections (b)(1) and (c)(1), a person who would ordinarily receive or be entitled to receive a salary, fee, or other remuneration for administering care under such circumstances to the patient in question shall be deemed to be acting for or in expectation of remuneration even if the person waives or elects not to charge or receive remuneration on the occasion in question.

*Id.* § 74.001(b)-(d).

It is undisputed that Dr. McIntyre administered emergency care in good faith and did not act wilfully or wantonly. The question on appeal is whether Dr. McIntyre proved himself protected by the defense as a matter of law. Appellants contend that Dr. McIntyre falls within two exceptions found in the statute. By their first issue, appellants argue that Dr. McIntyre comes within section 74.001(b)(1), which excludes from protection individuals who administer emergency care "for or in expectation of remuneration." *Id.* § 74.001(b)(1).

Under section 74.001(d), two distinct possibilities exist for when a person is deemed to be acting for or in expectation of remuneration: when the individual would *ordinarily* (1) *receive* remuneration for administering care, or (2) *be entitled to receive* remuneration for such services. *Id.* § 74.001(d). While the first possibility speaks towards what is customary, the second possibility addresses legal entitlement. Dr. McIntyre falls within the protection of the Good Samaritan statute only if he conclusively proves, as a matter of law, that he would not customarily receive remuneration for the services he performed *and* he would not legally be entitled to remunera-

tion. Under the statute, it is of no consequence that the person claiming protection waives or elects not to charge for the medical assistance.

In support of his motion for summary judgment, Dr. McIntyre tendered only his own affidavit to prove he did not come within this statutory exclusion. His relevant proof consisted of the following two statements:

I did not charge the plaintiff for my services nor did I tender my services in expectation of compensation. This was not a situation for which I would ever charge.

 Appellants argue that the trial court erred in relying on Dr. McIntyre's testimony to establish that he would not ordinarily receive or be entitled to receive remuneration for administering care under the circumstances of this case. Summary judgment may be based on the affidavit of an interested party so long as such affidavit evidence is clear, positive, direct, credible, free from contradiction, and susceptible of being readily controverted. Tex.R. Civ. P. 166a(c); *Republic Nat'l Leasing Corp. v. Schindler,* 717 S.W.2d 606, 607 (Tex.1986). Like the standard for the exclusion of evidence, the admission of summary judgment evidence also rests within the sound discretion of the trial court. *Sanders v. Shelton,* 970 S.W.2d 721, 727 (Tex.App.—Austin 1998, pet. denied). The trial court could thus rely on Dr. McIntyre's affidavit testimony to establish his eligibility for qualifying for protection under the Good Samaritan statute.

Dr. McIntyre provided competent evidence that he did not receive or expect remuneration from Ms. Ramirez. In his affidavit, Dr. McIntyre stated, "I did not charge the plaintiff for my services nor did I render my services in expectation of compensation. This was not a situation for which I would ever charge." However,

these assertions in no way address whether Dr. McIntyre was *entitled* to receive remuneration for these services.

The record on appeal also contains Dr. McIntyre's deposition testimony concerning his affirmative defense. The relevant portions of his deposition testimony are as follows:

Q: Okay. Now you didn't bill Ms. Ramirez, did you?

A: No.

Q: Okay. You could have billed Ms. Ramirez had you wanted to. Is that true?

A: I don't think I—I don't think I am ethically allowed to bill Ms. Ramirez. I suppose when you say "could," is it physically possible to send a bill to someone? Certainly I could have.

. . . .

Q: Did you send a bill to Ms. Ramirez for what you did in those few minutes in the delivery Room 2?

A: Certainly not.

Q: And why not?

A: Because it would be unethical, in my opinion, to do so.

Q: Are you familiar with anyone in Travis County who would send a bill when they provided emergency care under these circumstances?

A: I'm not familiar with anyone who has ever done that.

Q: What has your experience been in which there have been emergency situations where a physician has stepped in because of ethical responsibilities, and sent bills?

A: I have no experience of that ever happening.

Q: Do you think—what are the ethical constraints that you see in billing a patient for performing the emer-

gency services that you provided here?

A: Well, there are—there is no—there is nothing about the provision—in my opinion, the provision of emergency services such as I rendered in this case that would allow me to render a bill for my services.

Q: And has that also been your experience with other physicians in Travis County performing emergency services?

A: In every instance I've ever known of, that was the standard.

Like Dr. McIntyre's affidavit testimony, the above deposition testimony establishes that Dr. McIntyre did not charge Ms. Ramirez for his services. Dr. McIntyre's deposition testimony also establishes that neither Dr. McIntyre nor, so far as he knows, any other physician in Travis County who might provide emergency services such as those Dr. McIntyre furnished would customarily charge for such services. However, Dr. McIntyre also has the burden to establish that he would not be entitled to remuneration. We do not believe the summary judgment evidence produced on this point is sufficient.

The only evidence in the record relating to whether Dr. McIntyre was entitled to charge for the services he administered to Ms. Ramirez was Dr. McIntyre's deposition testimony that "there is nothing about the provision—*in my opinion*, the provision of emergency services such as I rendered in this case that would allow me to render a bill for my services" (emphasis added). He further stated, "*I don't think* I am ethically allowed to bill Ms. Ramirez" (emphasis added).

 We believe that Dr. McIntyre's testimony merely raises a fact issue and does not conclusively prove he was not entitled to remuneration. For testimony of an interested witness to establish a fact as a matter of law, it must be clear, direct, and positive, with no circumstances in evidence tending to discredit or impeach such testimony. *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972). The uncontradicted testimony of an interested witness that is clear, direct, positive, and otherwise credible may be treated as conclusive evidence when the opposite party has the means and opportunity of disproving the testimony, if it is not true, and fails to do so. *Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965).

Dr. McIntyre's testimony that, in his opinion, he did not believe he could receive remuneration is not the positive, incontestable evidence necessary to establish that fact as a matter of law. Furthermore, we cannot say there are no circumstances in the evidence tending to discredit Dr. McIntyre's testimony. *See Swilley*, 488 S.W.2d at 67. We bear in mind that evidence favorable to the nonmovant will be taken as true in deciding whether there is a disputed material fact issue that precludes summary judgment. *Nixon*, 690 S.W.2d at 548. Most importantly, every reasonable inference must be indulged in favor of nonmovants and any doubts resolved in their favor. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984). We conclude that based on a review of the record in its entirety, Dr. McIntyre has not produced conclusive evidence that he was not entitled, as a matter of law, to receive remuneration. We do not hold that Dr. McIntyre is excluded from the protection of the statute. We hold merely that he has failed to carry his summary judgment burden to prove he is not excluded.

Although Dr. McIntyre's testimony was properly considered as summary judgment proof, it did not establish every essential

element of his affirmative defense. An issue of material fact thus remains as to whether Dr. McIntyre was legally entitled to receive remuneration for the services he rendered for Ramirez in the delivery room. We conclude, therefore, that the summary judgment was erroneously granted. *See Swilley*, 488 S.W.2d at 67.

## CONCLUSION

Because Dr. McIntyre's proof is insufficient to prove, as a matter of law, that he would not be entitled to remuneration and fails to establish that element of his affirmative defense, it cannot support the judgment. We thus reverse the trial court's judgment and remand the cause for further consideration.

JAN P. PATTERSON, Justice, dissenting.

A physician rendering emergency treatment will be uncertain after today whether he can claim the protections of the Good Samaritan Law, a statute the Texas Legislature enacted to encourage individuals— including physicians—to administer emergency care to victims without delay. The question presented by this appeal is whether appellee carried his burden of proof in establishing his entitlement to summary judgment under the statute. For the summary judgment to have been proper, Dr. McIntyre had to conclusively establish his affirmative defense that he did not administer care "for or in expectation of remuneration" as set forth in section 74.001(b)(1). Tex. Civ. Prac. & Rem. Code Ann. § 74.001(b)(1) (West Supp. 2001). Specifically, the majority concludes that Dr. McIntyre's affidavit averment that he did not charge for his services or render services in expectation of compensation is insufficient to establish this defense as a matter of law. Because appel-

lee has sustained his burden, I respectfully dissent.

In her petition, Mrs. Ramirez alleged that she had been diagnosed with gestational diabetes and was carrying a macrosomic baby. She had a history of gestational diabetes during the pregnancy of a previous child born with complications of macrosomia and shoulder dystocia. Within six minutes of responding to an emergency call to the hospital's delivery room, Dr. McIntyre, who had no prior contact with the patient, assessed the situation and accomplished the admittedly complicated delivery of Mrs. Ramirez's baby.

The majority agrees that Dr. McIntyre is entitled to invoke the protections of the statute because he in good faith administered emergency care in a hospital and did not act wilfully or wantonly. *See id.* § 74.001(c). The remaining issue, then, is whether Dr. McIntyre established as a matter of law that he did not administer such care "for or in expectation of remuneration." On this issue alone, the majority concludes that Dr. McIntyre did not produce conclusive evidence, but that he raised a fact issue, thus defeating summary judgment. Having averred unequivocally that he did not charge Mrs. Ramirez for his services or render his services in expectation of compensation, in the absence of controverting evidence, Dr. McIntyre is entitled to summary judgment. *See Hernandez v. Lukefahr*, 879 S.W.2d 137, 141 (Tex.App.—Houston [14th Dist.] 1994, no writ). To find that Dr. McIntyre falls within the protection of the statute, the majority concludes he must prove *both* "that he would not customarily receive remuneration for the services he performed *and* he would not legally be entitled to compensation."

To prevail on a motion for summary judgment, a movant must establish that there is no genuine issue as to any materi-

al fact and that the movant is entitled to judgment as a matter of law. A defendant who conclusively establishes an affirmative defense is entitled to summary judgment.[1] A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the summary judgment proof. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex.1982). Once the movant establishes his entitlement to summary judgment, the burden shifts to the nonmovant to show why summary judgment should be avoided. *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex.1989).

Although we view the summary judgment proof in the light most favorable to the nonmovant, and resolve all doubts as to the existence of a genuine issue of material fact in the nonmovant's favor, *see Nixon v. Mr. Property Management*, 690 S.W.2d 546, 548–49 (Tex.1985), where the trial court does not specify the ground on which it relies in granting summary judgment, as here, the summary judgment must be affirmed on appeal if any of the theories advanced are meritorious, *see Rogers v. Ricane Enterprises, Inc.*, 772 S.W.2d 76, 79 (Tex.1989). We are precluded on appeal from considering grounds not expressly presented in writing in opposition to the summary judgment motion. Tex.R. Civ. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 676–79 (Tex.1979).

In his affidavit submitted in support of his motion for summary judgment, Dr. McIntyre testified:

I did not charge the plaintiff for my services nor did I render my services in expectation of compensation. This was not a situation for which I would ever charge. I do not specialize nor am I routinely assigned to an emergency room. I am not on an emergency response team and was not on call for the hospital, Dr. Gunter or her group on the date of this incident.

In granting summary judgment in Dr. McIntyre's favor, the district court concluded that Dr. McIntyre adduced "very strong evidence:" "[H]e didn't charge for it, he didn't expect to charge for it, and that it's ordinarily not charged for by anybody, and that he's never heard of one of these emergencies where there was a charge in this kind of situation."

To establish facts through an interested witness, as Dr. McIntyre is in this case, the testimony must be uncontroverted, clear, positive, direct, credible, free from contradiction, and susceptible to being readily controverted.[2] Tex.R. Civ. P. 166a(c). If the testimony meets these requirements, it will support a summary judgment. *Casso*, 776 S.W.2d at 558. Because Dr. McIntyre's averments in his affidavit meet all of these requirements establishing each element of his affirmative defense, I would conclude that he has demonstrated his entitlement to summary judgment.

Dr. McIntyre was thus entitled to summary judgment unless Mrs. Ramirez raised an issue of material fact by refuting this unequivocal evidence. The summary judgment evidence provided by Mrs. Ra-

---

1. *See, e.g., Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 282 (Tex.1996); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1995); *Kassen v. Hatley*, 887 S.W.2d 4, 9 (Tex.1994); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex.1979).

2. Because Ramirez did not object to the McIntyre affidavit on these grounds, the objection is waived. *See Ahumada v. Dow Chem. Co.*, 992 S.W.2d 555, 562 (Tex.App.—Houston [14th Dist.] 1999, no pet.); *Patterson v. Mobiloil Fed. Cred. Un.*, 890 S.W.2d 551, 554 (Tex.App.—Beaumont 1994, no writ).

mirez does not raise a fact issue that Dr. McIntyre acted for or in expectation of remuneration. In response to the summary judgment motion, the only evidence presented by Mrs. Ramirez concerning this issue was (i) a portion of Dr. McIntyre's deposition testimony and (ii) the affidavit of Dr. Stuart Edelberg, a Maryland obstetrician, who opined that Dr. McIntyre was entitled to charge for the emergency delivery. The only remuneration testimony submitted by Mrs. Ramirez in response to the motion is the following exchange:

Q: Okay. Now you didn't bill Ms. Ramirez, did you?

A: No, sir.

Q: Okay. You could have billed Ms. Ramirez had you wanted to. Is that true?

A: I don't think I—I don't think I am ethically allowed to bill Ms. Ramirez. I suppose when you say "could," is it physically possible to send a bill to someone? Certainly I could have.

Q: Sure. Had you desired to, you could have obtained Ms. Ramirez's address and sent her a bill for your services. True?

A: Yes.

This "admission," Mrs. Ramirez argues, places Dr. McIntyre "squarely" within the exception of administering care for or in expectation of remuneration. Thus, Mrs. Ramirez argues that the excerpted testimony demonstrates that Dr. McIntyre *could* have sent her a bill and that, based on the Edelberg affidavit, he was entitled to send her a bill.

That a physician can *physically* look up an address and generate a bill to be sent to an individual does not render emergency care administered for or in expectation of remuneration. This testimony does not suffice to refute Dr. McIntyre's affidavit or to create a fact question. *See Purcell v.*

*Bellinger,* 940 S.W.2d 599, 602 (Tex.1997); *Ryland Group v. Hood,* 924 S.W.2d 120, 122 (Tex.1996). Mrs. Ramirez provided no evidence that the parties ever discussed or contemplated payment for services rendered. Nor did Mrs. Ramirez present evidence that Dr. McIntyre had charged for services rendered under similar circumstances. Thus, except for the Edelberg affidavit that the trial court ruled was inadmissible, Dr. McIntyre's declaration is uncontroverted.

The majority concludes that "we cannot say there are no circumstances in the evidence tending to discredit Dr. McIntyre's testimony." To be sure, if the credibility of the affiant is likely to be a dispositive factor in the resolution of the case, summary judgment is not appropriate. *Casso,* 776 S.W.2d at 558. Mrs. Ramirez does not contend that Dr. McIntyre charged for his services or rendered the services with the expectation that he would be paid; rather, Mrs. Ramirez argues, without proof, that Dr. McIntyre may have waived his fee to invoke this statute's protections. But there are no facts set forth in the motion or response from which one could infer a waiver. Conclusory statements that are unsupported by facts are not proper as summary judgment proof. Mrs. Ramirez simply failed to adduce evidence sufficient to raise a fact issue.

To defeat the motion, the majority concludes that Dr. McIntyre's deposition testimony stating that (i) "there is nothing about the provision—in my opinion, the provision of emergency services such as I rendered in this case that would allow me to render a bill for my services" and (ii) "I don't think, I am ethically allowed to bill Ms. Ramirez" raises a fact issue and is not the positive, incontestable evidence necessary to establish that he did not act "for or in expectation of remuneration."

This testimony does not defeat Dr. McIntyre's entitlement to summary judgment because the deposition testimony does not conflict with his affidavit testimony, and Mrs. Ramirez fails to adduce evidence that either raises a fact question or refutes Dr. McIntyre's evidence. At most, Dr. McIntyre's testimony supports his averment that he did not charge for the care he provided by supplying an additional reason for his decision, that it would be unethical. Moreover, in its context, the testimony follows unequivocal testimony that he did not ever charge for emergency care and knew of no other physician who did charge.

In my view, the majority simply misconstrues the statute, unduly restricting the availability of summary judgment under the language of section 74.001(b)(1). Tex. Civ. Prac. & Rem.Code Ann. § 74.001(b)(1). I think it is clear that when Dr. McIntyre avers that he did not charge Mrs. Ramirez nor did he render care in expectation of remuneration, in the absence of controverting evidence, he falls within the protection of the statute.

If "for or in expectation of remuneration" were not elsewhere defined in the statute, none could dispute what it means in this context and that would be the end of our inquiry. But section 74.001(d) further defines that phrase and excludes from the protections of the statute any person who "would *ordinarily* receive or be entitled to receive" remuneration "even if the person waives or elects not to charge or receive remuneration on the occasion in question." *Id.* § 74.001(d). The majority apparently agrees that Dr. McIntyre demonstrated that he "would not ordinarily receive remuneration." But they conclude that he failed to demonstrate that he is not *entitled to receive* remuneration because under some *legal* theory he may be entitled to seek it. Appellants argue on appeal that we may infer that Dr. McIntyre may have been entitled to recover under an implied contract or restitution theory. Because this issue was not expressly presented in writing in response to the motion for summary judgment, we may not consider it. *See* Tex.R. Civ. P. 166a(c); *Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979).

But the language of the statute also counsels against the interpretation given it by the majority. This second requirement suggested by the majority simply cannot be found in a permissible reading of the statutory provision at issue. In excluding persons from the protections of the statute who "would ordinarily receive or be entitled to receive" remuneration, without analysis, the majority enlarges the definition to create a two-pronged requirement. To find that Dr. McIntyre falls within the protection of the statute, they conclude he must prove *both* "that he would not customarily receive remuneration for the services he performed *and* he would not legally be entitled to compensation." The district court reasoned that the use of the term *ordinarily* modified both *receive* and *entitled to receive.* Surely, if the terms contained in the definitional section are susceptible of two readings, one of which comports with the common sense meaning of "for or in expectation of remuneration," and one of which does not, we should not adopt the reading that renders the defined phrase meaningless and superfluous. A definition cannot be read to undermine the spirit and the purpose of the statute. *See Nootsie, Ltd. v. Williamson County Appraisal Dist.,* 925 S.W.2d 659, 662 (Tex. 1996) (holding courts must reject interpretations that defeat a statute's purpose if another reasonable interpretation exists). Surely it must be read to explain the phrase—and not destroy it. We should not parse words beyond their intended meaning. There is no authority or basis

for the majority's interpretation and the legislative history of the amendments to the statute does not support it.[3]

Our judicial task is to discern legislative intent and to implement its intendment. By the language of the statute, the legislature clearly intended to encourage physicians and other health care professionals—in a hospital—to render emergency care. If entitlement to remuneration under some unarticulated legal theory or multipronged requirement were the test, no doctor would ever render emergency care.

At the summary judgment hearing, then, the particularized evidence presented to the trial court demonstrated that Dr. McIntyre was entitled to summary judgment on his affirmative defense. That evidence did not raise a fact issue and was not controverted. I would conclude, as a matter of law, the evidence was sufficient (i) to demonstrate that Dr. McIntyre did not administer emergency care for or in expectation of remuneration and (ii) to support the rendition of summary judgment. Accordingly, I would conclude that the trial court did not err and that the judgment should be affirmed.

---

**3.** That the definition in section 74.001(d) was added by the legislature in 1993 to address remuneration for "purposes of Subsection (b)(1) and (c)(1)," and *not* subsection (c)(2)—the only paragraph specifically addressing physicians—supports this common sense reading of the statute. Tex. Civ. Prac. & Rem.Code Ann. § 74.001(d) (West.Supp. 2001).

Ramirez addresses subsection (c)(2) only to argue that, because Dr. McIntyre stepped in voluntarily to perform the delivery, he became the attending physician in charge of the delivery. The majority does not address subsection (c)(2).